NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOURNAL OF AFRICAN CIVILIZATIONS LTD., INC. and JACQUELINE VAN SERTIMA, Executrix of the Estate of Ivan Van Sertima, Plaintiffs, v. TRANSACTION PUBLISHERS, Defendant. | Civil Action No. 11-6268 (SDW)(MCA) **OPINION** December 11, 2013 |

**WIGENTON**, District Judge.

Before the Court is the Journal of African Civilizations Ltd., Inc. ("Journal") and Jacqueline Van Sertima's ("Mrs. Van Sertima"), Executrix of the Estate of Dr. Ivan Van Sertima ("Dr. Van Sertima"), (collectively "Plaintiffs") Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(c). This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, Plaintiffs' Motion for Summary Judgment is **GRANTED**, in part, with respect to copyright infringement of the electronic copies of Dr. Van Sertima's books at issue, and **DENIED**, in part, with respect to copyright infringement of the physical copies of Dr. Van Sertima's books at issue and Plaintiffs' request for statutory damages.

## BACKGROUND

*Parties*

Dr. Van Sertima was a professor at Rutgers University for thirty-four years. (Pls.' Br. 4.) In 1979, he founded the Journal—"a publication that has been adopted as part of the curriculum of various schools and institutions." (Id.) Dr. Van Sertima was the president and principal of the Journal before he passed away on May 25, 2009. (Pls.' Statement of Material Facts ¶¶ 4-5.) After passing, his wife Mrs. Van Sertima became the president and principal of the Journal. (Id. ¶ 6.) Transaction Publishers ("Defendant") is a publishing company located on the Rutgers University campus in Piscataway, New Jersey. (Id. ¶ 8; Def.'s Response to Pls.' Statement of Material Facts ¶ 8.)

Dr. Van Sertima authored the following books that are at issue in this case: (i) Blacks In Science, Ancient and Modern; (ii) Black Women in Antiquity; (iii) Nile Valley Civilizations; (iv) Egypt Revisited; (v) African Presence in Early Asia; (vi) Great Black Leaders: Ancient and Modern; (vii) Great African Thinkers; (viii) African Presence in Early America; (ix) Golden Age of the Moor; and (x) African Presence in Early Europe (collectively, the "Works"). (Pls.' Statement of Material Facts ¶ 10.) Plaintiffs own the copyrights to the Works. (Id. ¶¶ 7-13.)

*Plaintiffs' Relationship With Defendant*

In the early 1980s,[1] Dr. Van Sertima and Defendant entered into an agreement to print, distribute, and sell volumes of the Works.[2] (Id. ¶ 12.) Pursuant to this agreement, Defendant printed the Works and the Journal reimbursed Defendant for the printing and production costs.

---

[1] Plaintiffs indicate that the parties' relationship began in approximately 1981 while Defendant indicates that it began in 1983. (Pls.' Br. 5; Pls.' Br., Ex. 5, Def.'s Response to Pls.' Interrogatories, #3.)
[2] The parties dispute whether Dr. Van Sertima and Defendant had a "publishing" agreement. Plaintiffs argue that Defendant served only as a "printer" while Defendant argues that it "had a traditional publisher-author relationship" with Dr. Van Sertima. (See Pls.' Statement of Material Facts ¶¶ 12, 14; Def.'s Response to Pls.' Statement of Material Facts ¶ 12.)

(Pls.' Br. 5; Pls.' Br., Ex. 5, Def.'s Response to Pls.' Interrogatories, #2.) Although the Journal owned the inventory, Defendant retained a portion of the printed books and sold them. (Pls.' Br. 5-6.) Fifty percent of the income that Defendant received was given to the Journal or applied to the costs for printing and production. (Pls.' Br., Ex. 5, Def.'s Response to Pls.' Interrogatories, #2.) There is no written document reflecting this agreement. (Pls.' Statement of Material Facts ¶ 14.)

In the late 1990s, Dr. Van Sertima and Defendant entered into a new agreement. (Id. ¶ 15.) According to Plaintiffs, pursuant to the agreement, Defendant "would provide the Journal and Dr. Van Sertima with copies of the Works as requested in consideration for the right to an equal number of the Works, which [Defendant] would be permitted to sell without paying a royalty." (Id.) According to Defendant, pursuant to the new arrangement, it "began ordering reprints of the books when needed and paid all costs of the reprints [and] would give a portion of the inventory to Dr. Van Sertima to sell or use for his own purposes." (Def.'s Response to Pls.' Statement of Material Facts ¶ 15.) Pursuant to the agreement, the Journal and Defendant would each retain the full amount of their sales of the Works. (Id.) There is no written document reflecting this agreement.

At some point in the early 2000s—approximately 2004—Dr. Van Sertima stopped requesting and picking up copies of books. (Pls.' Statement of Material Facts ¶¶ 16-17; Def.'s Response to Pls.' Statement of Material Facts ¶ 15; Pls.' Br. 6.) Defendant states that it continued to print books in smaller quantities to meet customer demand. (Def.'s Response to Pls.' Statement of Material Facts ¶ 15.) Because Defendant was absorbing the costs of printing, it reverted to a standard royalty agreement whereby Dr. Van Sertima received five percent of net sales. (Id.) After Dr. Van Sertima stopped picking up books, the parties neither discussed nor

agreed to a royalty-structured agreement. (Pls.' Statement of Material Facts ¶¶ 21-22.) Based on the record, there is no document reflecting this arrangement.

In the late 1990s, Defendant provided copies of portions of the Works to Google to be previewed electronically. (Id. ¶ 30; Def.'s Response to Pls.' Statement of Material Facts ¶ 30.) Between May 2011 and December 2011, twenty-five copies of the Works were sold electronically through Google. (Pls.' Statement of Material Facts ¶ 35.) Plaintiffs were not aware that the Works were being made available in electronic format. (Id. ¶ 34.)

In 2008, Defendant offered to pay the accrued royalties to Plaintiffs. (Id. ¶ 46; Def.'s Response to Pls.' Statement of Material Facts ¶ 18.) However, no royalties were paid to Plaintiffs. (Pls.' Statement of Material Facts ¶ 20.) On March 31, 2011, Plaintiffs sent a letter to Defendant demanding that it "cease and desist reproducing and distributing the Works." (Id. ¶ 48.)

On October 25, 2011, Plaintiffs filed their Complaint alleging copyright infringement. Plaintiffs seek maximum statutory damages and attorneys' fees.

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." Id. at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." Id. The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. See Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp., 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." Black Car Assistance Corp. v. New Jersey, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

**DISCUSSION**

**I.     Copyright Infringement Claim**

To establish a federal copyright infringement claim, a plaintiff must show that: (1) the plaintiff is the valid owner of the copyright; and (2) the defendant engaged in an unauthorized copying of original elements of the copyright owner's work. Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc., 307 F.3d 197, 206 (3d Cir. 2002). In this context, "copying" means "the act of infringing any of the exclusive rights that accrue to the owner of a valid copyright, as set forth at 17 U.S.C. § 106, 'including the rights to distribute and reproduce copyrighted material.'" Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F.3d 199, 207 (3d Cir. 2005) (citing Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 291 (3d Cir. 1991)).

Not all cases involving copyrights give rise to copyright infringement claims. Greenfield v. Twin Vision Graphics, Inc., 268 F. Supp. 2d 358, 368 (D.N.J. 2003) (noting that "the line between cases that 'arise under' the copyright laws, as contemplated by § 1338(a), and those that present only state law contract issues, is a very subtle one") (internal citations and quotations omitted). For instance, an action involving relief under a licensing agreement—such as payment of royalties—is a state law contract claim. Id. at 369. The determination is not so clear "where it is alleged that one of the parties [to a licensing agreement] used the copyrighted material beyond the scope of the agreement, thus infringing the licensor's copyright." Id.

A nonexclusive license of a copyright—which does not amount to a transfer of ownership—does not need to be in writing and can be implied from conduct or granted orally "where the creator of a work at a defendant's request 'hand[s] it over, intending that the

6

defendant copy and distribute it.'" MacLean Associates, Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc., 952 F.2d 769, 778 (3d Cir. 1991) (citing Effects Assocs., Inc. v. Cohen, 908 F.2d 555, 558 (9th Cir. 1990), cert. denied, 498 U.S. 1103 (1991)). "Whether there is an implied license is determined by an objective inquiry into the facts; the private hopes of the creator are not relevant." Nat'l Ass'n For Stock Car Auto Racing, Inc. v. Scharle, 184 F. App'x 270, 275 (3d Cir. 2006) (citing John G. Danielson, Inc. v. Winchester–Conant Props., Inc., 322 F.3d 26, 42 (1st Cir. 2003)). "[D]elivery of a copy of the creation 'is one factor that may be relied upon in determining that an implied license has been granted.'" MacLean Associates, Inc., 952 F.2d at 779 (citing Effects Assocs., 908 F.2d at 559 n. 6). In the context of a nonexclusive license, "the licensor can still bring suit for copyright infringement if the licensee's use goes beyond the scope of the nonexclusive license." Id. Other courts have noted that an implied nonexclusive license to use copyright materials exists when: "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." I.A.E., Inc. v. Shaver, 74 F.3d 768, 776 (7th Cir. 1996) (citing Effects Assocs., 908 F.2d at 558-59).

**A. Parties' Arguments**

Here, it is not disputed that Plaintiff was the valid owner of the copyrights for the Works. (See Answer ¶ 8.) Instead, the parties primarily disagree about whether Defendant engaged in unauthorized copying of the Works. The determination of this issue affects the nature of this dispute, namely whether it is copyright infringement or breach of contract.

Plaintiffs argue that this is a copyright infringement case where "Defendant had access to, and then made exact copies of, and sold in physical and electronic formats, the Works without

7

Plaintiffs' authorization." (Pls.' Br. 13.) Plaintiffs assert that the "[unauthorized access] analysis is easy because Defendant admits that it had access to the Works and then made exact copies of the Works." (Id. at 14.) Plaintiffs reject the notion that Defendant had an implied nonexclusive license. (Pls.' Reply 6.) In support, Plaintiffs indicate that there is no evidence of a royalty-based relationship, discussions as to a royalty, or authorization for the sale of electronic copies of the Works. (Id.)

On the other hand, Defendant argues that at issue is a contract claim for failure to pay royalties and not copyright infringement. (Def.'s Opp. 10.) Defendant contends that it "had a nonexclusive license to take actions customarily included in an ongoing publishing relationship, including having books printed and selling them." (Id. at 9.) Defendant asserts that after Dr. Van Sertima stopped requesting and picking up books for his own use, Defendant began to track royalties for copies of the Works sold based on a 5% royalty rate. (Id.) Defendant admits that "[it] did not pay this royalty to Dr. Van Sertima but made several offers to do so before this litigation was filed. These offers were not accepted." (Id.)

**B. Analysis**

As a preliminary matter, there are two categories of publications of the Works at issue—physical books and electronic copies. Although the parties address these categories together, this Court finds it appropriate to analyze them individually for the purposes of this Motion.

    i. **Physical Publications**

The initial agreement between Defendant and Dr. Van Sertima required Dr. Van Sertima to pay the direct costs of production while Defendant printed physical copies of the Works and assumed other costs. (Pls.' Br. 5; Pls.' Br., Ex. 5, Def.'s Response to Pls.' Interrogatories, #2; see Def.'s Opp, Ex. F.) Then, the agreement changed requiring Defendant to print copies and

8

pay costs of production of the Works in return for physical copies to sell royalty-free. (Pls.' Statement of Material Facts ¶ 15; Def.'s Response to Pls.' Statement of Material Facts ¶ 15.) At some point, Defendant unilaterally changed the agreement to have a royalty-based structure. (Pls.' Statement of Material Facts ¶¶ 21-22; Def.'s Response to Pls.' Statement of Material Facts ¶¶ 21-22.) The record reflects that none of these agreements are in writing. All of these facts are undisputed.

However, there are material facts that are in dispute. Importantly, it is unclear whether Dr. Van Sertima intended for Defendant to continue to print and sell books after he stopped picking them up. Plaintiffs argue that Defendant "took advantage of Dr. Van Sertima's declining health to continue earning income without providing books to Plaintiffs to sell or otherwise paying Plaintiffs." (Pls.' Br. 20.) However, there is no indication in the record that Defendant was ever obligated to or had the practice of providing books to Plaintiffs. Additionally, the parties did not discuss whether Defendant should continue to print and sell the books after Dr. Van Sertima stopped picking up the books. Defendant argues that as Dr. Van Sertima's publisher, it was involved in "pricing, advertising, marketing and distributing the [W]orks." (Def.'s Opp. 8.) Therefore, Defendant argues that it "had a nonexclusive license to take actions customarily included in an ongoing publishing relationship, including having books printed and selling them." (Id. at 9.) Because none of the agreements between the parties are written, the scope of such agreements is unclear. Furthermore, given the longstanding relationship of the parties, it is plausible that Defendant reasonably believed it should print and sell books when necessary based on the prior understanding of the agreements. However, this is clearly in dispute. Based on the record, this Court cannot properly determine whether there was a nonexclusive license that was implied by conduct. Thus, the nature of this dispute relating to the

physical publications—whether it is copyright infringement or breach of contract—has yet to be resolved. With respect to the claim of copyright infringement for the physical publications of the Works, summary judgment is denied.

### ii. Electronic Publications

In the late 1990s, Defendant provided copies of the Works to Google to be previewed electronically. (Pls.' Statement of Material Facts ¶ 30.) Between May 2011 and December 2011, twenty-five copies of the Works were sold electronically through Google. (Id. ¶ 35.) Although Defendant did not sell these books directly, it provided the electronic copies to Google. Nothing in the record indicates that Defendant was authorized to copy, sell, or publish the Works in electronic format at any point. (See id. ¶ 29.) The record does not reflect the existence of any nonexclusive license with respect to electronic publishing of the Works or any applicable extension of an implied nonexclusive license for physical publishing to electronic publishing. Moreover, Plaintiffs were not aware that the Works were being published electronically. (Id. ¶ 34.) Based on these facts, Plaintiffs' claim against Defendant for the electronic copies of the Works is properly framed as a copyright infringement claim rather than a breach of contract.

Defendant essentially concedes that it engaged in "unauthorized activity" and contends that the books were "inadvertently" sold electronically. (Def.'s Opp. 10.) Defendant also notes that it "promptly revoked this authorization when the problem was brought to its attention." (Id. at 10-11.) The undisputed facts indicate that Defendant did engage in copying, selling, and/or publishing the Works in electronic format for which it did not have authorization or ownership. Thus, Plaintiff is entitled to partial summary judgment with respect to copyright infringement of the electronic publishing and selling of twenty-five copies of the Works.

## II. Statutory Damages

The Copyright Act permits a copyright owner to receive statutory damages in the range of $750 through $30,000, "as the court considers just," in lieu of having to prove actual damages. See 17 U.S.C. § 504(c)(1). In the case of willful infringement, courts have the discretion to "increase the award of statutory damages to a sum of not more than $150,000" for each work infringed "where the copyright owner sustains the burden of proving . . . that infringement was committed willfully." 17 U.S.C. § 504(c)(2).

In the instant matter, Plaintiffs seek maximum statutory damages under 17 U.S.C. § 504(c)(2) for ten acts of willful copyright infringement totaling an amount of $1.5 million. (Pls.' Br. 19.) Plaintiffs argue that Defendant's willfulness is evidenced in having "t[aken] advantage of old friends, the Van Sertimas, as they were aging, stopped providing the Van Sertimas with any information, and then continued with its infringing conduct even after receiving a cease and desist letter." (Id. at 20.) Defendant argues that there is no evidence of willful conduct as it "continued to operate under its non-exclusive licensing arrangements, attempted to create a method for calculating royalties for Dr. Van Sertima since he appeared to have stopped picking up books, and generally attempted to act as a responsible publisher in keeping Dr. Van Sertima's works alive." (Def.'s Opp. 14.)

Based on the record, this Court finds no indication that Defendant acted in a willful manner. Instead, the record demonstrates that the parties had a longstanding relationship, Defendant attempted to pay royalties to Plaintiffs, and even now Defendant has no objection to delivering its remaining inventory of the Works to Plaintiffs.[3] Nothing in the record suggests

---

[3] In a letter dated April 1, 2011, Defendant noted the desire "to resolve this matter so that we can pay royalties accumulated and reach an agreement to continue to publish these volumes." (Pls.' Br. Ex 11.)

that Defendant's actions were malicious or willful in nature. Accordingly, Plaintiffs' request for statutory damages, maximum or otherwise, is denied.

**CONCLUSION**

For the reasons stated above, Plaintiffs' Motion for Summary Judgment is **GRANTED**, in part, with respect to copyright infringement of the electronic copies of the Works, and **DENIED**, in part, with respect to copyright infringement of the physical copies of the Works and Plaintiffs' request for statutory damages.

s/Susan D. Wigenton, U.S.D.J.

cc:   Madeline Cox Arleo, U.S.M.J.